HAWTHORN MELLODY, INC., ET AL., APPELLEES, *v.*
LINDLEY, TAX COMMR., APPELLANT.

[Cite as Hawthorn Mellody v. Lindley (1981),
65 Ohio St. 2d 47.]

(No. 80-993—Decided March 18, 1981.)

48

*Messrs. Smith & Schnacke, Mr. Joseph M. Rigot* and *Mrs. Maryann B. Gall,* for appellees.

*Mr. William J. Brown,* attorney general, and *Mr. Mark A. Engel,* for appellant.

WILLIAM B. BROWN, J.   The Tax Commissioner herein appeals a number of the board's determinations. For reasons set forth, we affirm in part and reverse in part.

## I.

The commissioner's first argument is that the board erred in determining that appellees' purchases of a refrigerant tank which stored ammonia, and two Muller tanks which stored ice cream flavoring were excepted from sales taxation as adjuncts to property used or consumed directly in the production of tangible personal property for sale under R. C. 5739.01(E)(2) and 5739.01(S).

The record indicates that the refrigerant tank interconnects with a refrigeration system through which ammonia (a coolant) circulates; and that refrigeration is essential to prevent spoilage during the processing of milk and ice cream. The record also indicates that the two Muller tanks are connected by a piping system to containers in which batches of unflavored ice cream are mixed with ice cream flavoring.

R. C. 5739.02 levies an excise tax on "each retail sale made in this state." R. C. 5739.01, in part, provides:

"(E) 'Retail sale' * * * include[s] all sales except those in which the purpose of the consumer is:

" * * *

"(2) * * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by * * * processing * * * .

" * * * *

"(S) * * * '[P]rocessing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

In *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 176-177, this court described the requirements for a sales tax exception under the above subsections as follows:

"Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to *direct* use or consumption."

The commissioner herein argues that neither the refrigerant tank nor the Muller tanks are excepted from sales taxation under R. C. 5739.01(S) and *Canton Malleable Iron Co.* v. *Porterfield, supra,* because neither was used "after the transforming or conversion [*i.e.,* the processing of milk and ice cream] ha[d] commenced."

There is no merit to this contention. Based upon record evidence, the board found that the processing of both the milk and ice cream commenced at a considerably early point in time, *i.e.,* when raw milk was pumped from transportation vehicles (tankers) through a clarifier which separated dirt and other foreign particles from the raw milk. It is simply not this court's function to overrule board findings of fact which are based upon sufficient probative evidence.[2] R. C. 5717.04; see, *e.g., Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53; *Emery Industries* v. *Kosydar* (1975), 43 Ohio St. 2d 34; and *Highlights for Children* v. *Collins* (1977), 50 Ohio St. 2d 186.

---

[2] We also conclude that there is sufficient record evidence to support findings under R. C. 5739.01(S) that the refrigerant tank is adjunct to ammonia and the refrigeration system; that the two Muller tanks are adjunct to ice cream flavoring; and that all three tanks are "used * * * at the same location" where processing of the milk and ice cream takes place.

Alternatively, the commissioner argues that the refrigerant tank is not excepted from sales taxation under R. C. 5739.01(E)(2) and 5739.01(S) because neither the ammonia nor the refrigeration system, *i.e.*, the properties to which the refrigerant tank are adjunct under R. C. 5739.01(S), is used "directly" in the production of milk and ice cream by "processing" within the meaning of R. C. 5739.01(E)(2) and 5739.01 (S).[3] The commissioner argues that even though refrigeration may be essential during the processing of milk and ice cream, refrigeration does not actually "process" milk and ice cream because it does not transform or convert them into a different state or form as required by R. C. 5739.01(E)(2) and 5739.01 (S). Rather, the commissioner argues, refrigeration merely preserves milk in its present state by preventing spoilage.

We must reject this argument. While mere essentiality to the production of tangible personal property by processing is not sufficient to satisfy the direct use requirement of R. C. 5739.01(E)(2), see, *e.g.*, *Canton Malleable Iron Co.* v. *Porterfield, supra,* at pages 175-176; *Custom Beverage Packers* v. *Kosydar* (1973), 33 Ohio St. 2d 68, 71-72, it would be unreasonable to disaggregate the processing of milk and ice cream in the manner necessary to determine that the refrigeration system and ammonia are not used directly in this process. Thus, as an adjunct to their direct use, the refrigerant tank also satisfies this requirement of R. C. 5739.01(E)(2).[4]

Therefore, we affirm the board's decision that the purchases of the refrigerant tank and the two Muller tanks are excepted from sales taxation under R. C. 5739.01(E)(2) and 5739.01(S).

## II.

The commissioner next argues that the board erred in de-

---

[3] Somewhat inconsistently, the commissioner has not asserted that the ammonia does not satisfy the direct use exception of R. C. 5739.01(E)(2).

[4] The commissioner has not made a similar argument with respect to the two Muller tanks apparently because ice cream flavoring, *i.e.*, the property to which the Muller tanks are adjunct under R. C. 5739.01(S), unambiguously transforms or converts unflavored ice cream into a different state or form as required by R. C. 5739.01 (E)(2) and 5739.01(S), and is thus directly used in the production of tangible personal property by processing within the meaning of R. C. 5739.01(E)(2).

termining that a certain portion of appellees' case conveyor system was excepted from taxation as packaging equipment under R. C. 5739.02(B)(15).

The portion of the conveyor system at issue unstacks and cleans returned plastic and wire milk cases and then conveys them to another part of the system where they are automatically repacked with filled milk cartons. The commissioner has not assessed other portions of the conveyor system.

R. C. 5739.02, in part, provides:

"(B) The tax does not apply to * * * :

"(15) Sales to persons engaged in any of the activities mentioned in division (E)(2) of section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of *machinery, equipment, and material for use in packaging tangible personal property produced for sale,* or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers, and *'packaging' means placing therein."* (Emphasis added.)

There is no dispute that appellees are engaged in an activity mentioned in R. C. 5739.01(E)(2), and that the portion of the conveyor system at issue is machinery or equipment within the meaning of R. C. 5739.02(B)(15). In addition, the commissioner does not dispute that the plastic and wire milk cases are "packages" within the meaning of R. C. 5739.02(B)(15). Cf. *Custom Beverage Packers* v. *Kosydar, supra,* at pages 73-74; *Cole National Corp.* v. *Collins* (1976), 46 Ohio St. 2d 336, 338; *Highlights for Children* v. *Collins, supra,* at page 191.

The commissioner's argument is that, in view of the definition of "packaging" in R. C. 5739.02(B)(15), *i.e.,* "placing therein," the portion of the conveyor system at issue is not excepted from taxation as "machinery * * * [or] equipment * * * use[d] in packaging tangible personal property produced for sale * * * " under R. C. 5739.02(B)(15). It is the commissioner's position that only machinery or equipment used in *placing* tangible personal property produced for sale *in packages* is entitled to a tax exception.

The commissioner buttresses the above argument by relying on *National Tube Co.* v. *Glander* (1952), 157 Ohio St.

407, for the proposition that statutes relating to exceptions from taxation are to be strictly construed against the taxpayer. In this connection, he asks that we ignore *dictum* in *Custom Beverage Packers* v. *Kosydar, supra,* at page 73, to the effect that machinery or equipment need only "operate" on a package to be excepted from taxation under R. C. 5739.02(B)(15). The commissioner asserts that the board relied on this overly broad *dictum* in erroneously granting a tax exception in this case and in other cases. See, *e.g., Pepsi-Cola Bottling Co. of Cincinnati* v. *Kosydar* (November 27, 1973), 49 BTA Decns., Index No. 12, at page 11.

We agree with the commissioner's construction of R. C. 5739.02(B)(15). To be excepted from taxation under R. C. 5739.02(B)(15), machinery or equipment must be used in placing tangible personal property produced for sale in packages. Accordingly, *dictum* to the contrary in *Custom Beverage Packers* v. *Kosydar, supra,* at page 73, is repudiated. However, for reasons set forth, we nevertheless affirm the board's decision to except the portion of the case conveyor system at issue from taxation under R. C. 5739.02(B)(15).

The issue presented is whether this portion of the conveyor system should be considered as a separate piece of machinery or equipment used to unstack, clean and convey milk cases (packages); or, alternatively, as an integral part of machinery or equipment used in placing milk cartons (tangible personal property produced for sale) in milk cases (packages). Only in the latter case would this portion of the conveyor system be excepted from taxation under R. C. 5739.02(B)(15).[5]

The record indicates that the portion of the conveyor system at issue is an integral part of machinery or equipment used in placing milk cartons in milk cases. This portion unstacks and cleans plastic and wire milk cases returned from customers and then conveys them to a machine which places filled milk cartons in these milk cases. Simultaneously, in another portion of the system, milk cartons are filled, con-

---

[5] We must ignore the board's disposition as respects the case conveyor system because the board may have relied upon the *dictum* in *Custom Beverage Packers* v. *Kosydar, supra,* which we herein repudiate. Secondly, the board does not appear to have made any separate factual findings exclusively concerning the portion of the conveyor system that the commissioner has attempted to tax.

veyed and loaded into the above machine. After the milk cartons are placed in the milk cases, the milk cases are automatically stacked, and then conveyed to delivery trucks.

Based upon the above evidence, we find that the portion of the conveyor system at issue is an integral part of machinery or equipment used in placing tangible personal property produced for sale (milk cartons) in packages (milk cases). Thus, this portion of the conveyor system is excepted from taxation under R. C. 5739.02(B)(15).

## III.

The board also determined that various intercorporate transfers by title of equipment (1) from appellee Hawthorn's St. Louis division to Hawthorn's wholly-owned subsidiary appellee Royal Crest; and (2) from Hawthorn's New York wholly-owned subsidiary to Hawthorn's wholly-owned subsidiary appellee Farm Dairy, were made without "consideration" within the meaning of R. C. 5739.01(B), and thus not subject to the sales tax. The commissioner herein argues that the above intercorporate transfers were made for consideration and thus taxable. We agree with the commissioner.[6]

R. C. 5739.01(B), in part, provides:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * * ."

Since R. C. 5739.01(B) broadly defines consideration, appellees obviously have a heavy burden to overcome.[7] More-

---

[6] Since Hawthorn's St. Louis division is merely a part of Hawthorn for tax and most other legal purposes, the transfers from Hawthorn's St. Louis division to its Royal Crest subsidiary must be treated as transfers from a parent (Hawthorn) to a subsidiary (Royal Crest) corporation. Thus, we are confronted herein only with intercorporate transfers, and not with *intra*corporate (interdivisional) transfers. Because corporations are separate taxable entities, transactions between affiliated corporations (*i.e.,* corporations having parent-subsidiary or common parent relationships) are ordinarily subject to the sales tax in the same manner as transactions between unrelated parties.

[7] The only relevant term of R. C. 5739.01(B) that is defined by statute is "price." See R. C. 5739.01 (H). However, it is apparent that "price" merely illus-

over, since appellees are seeking an exception from the sales tax, we must strictly construe R. C. 5739.01(B) against them. See *National Tube Co.* v. *Glander, supra.*

Appellees acknowledge that when titles to the pieces of equipment were transferred (1) from Hawthorn's St. Louis division to its Royal Crest subsidiary; and (2) from Hawthorn's New York subsidiary to its Farm Dairy subsidiary, the respective transferors (Hawthorn and its New York subsidiary) credited (reduced) equipment assets, and debited (increased) accounts receivable due from their respective transferees (Royal Crest and Farm Dairy). These transferees, correspondingly, debited (increased) equipment assets, and credited (increased) accounts payable owed to their respective transferors. These accounts receivable clearly satisfy the common-law definition of consideration, see 17 Ohio Jurisprudence 3d, Contracts, Sections 54 *et seq.;* and given its broadness, the statutory definition of consideration included in R. C. 5739.01(B) as well.

Appellees argue that, taken together, subsequent entries to the respective subsidiaries' accounts receivable, accounts payable and owner's (*i.e.,* Hawthorn's) equity accounts; and to Hawthorn's accounts receivable, investment in subsidiary, and owner's equity accounts demonstrate that the respective transferor's initial accounts receivable (due from its respective transferee) was not "consideration" within the meaning of R. C. 5739.01(B), *i.e.,* something of value given in exchange for the transferred equipment assets. Essentially, the effects of these subsequent accounting entries were (1) to credit (wipe out) the respective transferor's accounts receivable, and to debit (wipe out) its respective transferee's accounts payable; (2) to adjust both the appropriate subsidiary's owner's (Hawthorn's) equity account and Hawthorn's corresponding investment in subsidiary account; and (3) to permit each respective equipment asset account to continue to reflect the actual transfers of title.[8]

---

trates (and does not restrictively define) consideration within the meaning of R. C. 5739.01(B).

[8] In connection with the transfers from Hawthorn's St. Louis division to Royal Crest, it should be noted that Hawthorn, for its own internal convenience, accounted for its St. Louis division as a separate reporting unit. For external financial report-

Appellees' argument is without merit. Accounting practices are of interest only insofar as they reflect the substance of transactions. Herein, the transfers of title to the equipment and the ending balances in the above respective accounts indicate that *either* transfers for consideration *or* transfers by gift occurred. Since these transfers were obviously not gifts, they were necessarily for consideration.

Appellees also argue that these intercorporate transfers are exempt from taxation under the authority of *Roberts, Inc.,* v. *Kosydar* (1975), 42 Ohio St. 2d 495; and *IBEC Industries* v. *Lindley* (1980), 62 Ohio St. 2d 279. We disagree.

---

ing purposes, and for most legal purposes including taxation, however, Hawthorn's and its St. Louis division's separate accounts and statements must be combined to reflect the activities of the corporate entity, *i.e.,* Hawthorn, as a whole. Combining the above internal accounts, the record indicates that Hawthorn's and Royal Crest's accounting for the transfer from the St. Louis division to Royal Crest was as follows. First, Hawthorn credited equipment assets and debited accounts receivable from Royal Crest. Correspondingly, Royal Crest debited equipment assets and credited accounts payable to Hawthorn. Next, Royal Crest in effect "paid off" the above receivable with equity, *i.e.,* Hawthorn credited (wiped out) its accounts receivable from Royal Crest and debited its investment in Royal Crest. Correspondingly, Royal Crest debited (wiped out) its accounts payable to Hawthorn and credited owner's (Hawthorn's) equity. Thus, when the dust settled, Hawthorn no longer owned the above equipment assets; instead, Hawthorn had an increased investment in Royal Crest presumably equal to the accounting value of the equipment assets. On the other hand, Royal Crest owned these equipment assets, and thus increased its owner's (Hawthorn's) equity.

Because the accounts of three corporate entities (Hawthorn, New York subsidiary and Farm Dairy) were effected by the transfers from the New York subsidiary to Farm Dairy, the entries for these transfers are more intricate. The record indicates that entries similar in effect to those that follow would need to have been made: (1) The New York subsidiary credited equipment assets and debited accounts receivable from Farm Dairy. Correspondingly, Farm Dairy debited equipment assets and credited accounts payable to the New York subsidiary. (2) The New York subsidiary credited (wiped out) its accounts receivable from Farm Dairy and debited owner's (Hawthorn's) equity. Correspondingly, Hawthorn surely debited (increased) accounts receivable from Farm Dairy and credited (reduced) its investment in the New York subsidiary, reflecting that the New York subsidiary in effect *distributed* its accounts receivable from Farm Dairy to Hawthorn. (3) Farm Dairy subsequently debited (wiped out) its accounts payable to the New York subsidiary (which by virtue of the above distribution was now payable to Hawthorn), and credited owner's (Hawthorn's) equity. Hawthorn correspondingly, must have credited (wiped out) this effectively distributed accounts receivable from Farm Dairy and debited its investment in Farm Dairy. Since accounts cannot simply be "wiped out," balancing entries similar in effect to those described above must have been made.

*Roberts, supra,* held that the incorporation of an ongoing business partnership was not, within the meaning of R. C. 5739.01(B), a sale for consideration of the partnership's specific assets where the partners of the liquidating partnership became the shareholders of the newly organized corporation. Similarly, *IBEC Industries, supra,* held that the incorporation of an ongoing separate division of a corporate enterprise was not a sale for consideration of the division's specific assets where the corporate owner of the division became the sole shareholder of the newly organized subsidiary. Essential to the result both in *Roberts* and in *IBEC Industries* is, *inter alia,* that it would be appropriate to categorize a transaction as an exchange for consideration of an entire business entity, or separate division thereof, rather than as a sale for consideration of the above entity or division's specific assets. This essential condition is not present herein.

Thus, as respects these intercorporate transfers, the decision of the board is reversed. In all other respects, the decision of the board is affirmed.

*Decision affirmed in part*
*and reversed in part.*

CELEBREZZE, C. J., MCBRIDE, SWEENEY and LOCHER, JJ., concur.

HOLMES and C. BROWN, JJ., concur in part and dissent in part.

MCBRIDE, J., retired, of the Second Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting for P. BROWN, J.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part.

I concur in the judgment affirming that part of the Board of Tax Appeals' decision excepting from sales taxation the refrigerant tank, two Muller tanks and the case conveyor system, but I dissent from the reversal of the board's decision which excepted from sales taxation the intercorporate transfers of equipment.

It is my view that these intercorporate transfers of equipment are excepted from sales taxation under the controlling

authority of our recent decision in *IBEC Industries* v. *Lindley* (1980), 62 Ohio St. 2d 279. There, we held, at page 282, that the transfer of all corporate assets and liabilities from one corporate division to a wholly owned subsidiary of the same corporation was not a taxable "sale" for "consideration," but was " * * * merely a shifting of assets by a corporation from one division to another" which did not subject the transfer to taxation. In the cause *sub judice,* no money or other property was ever transferred to the transferor corporation to discharge its accounts receivable from the transferee corporation. These intercorporate transfers did not create the passing of actual "consideration" from one corporate entity to another.

The treatment accorded these intercorporate transfers excepting them from sales taxation should be identical to the sales tax exception accorded *IBEC Industries, supra,* and in *Roberts, Inc.,* v. *Kosydar* (1975), 42 Ohio St. 2d 495. See, also *Kloepfers* v. *Peck* (1953), 158 Ohio St. 577. Although factually distinguishable, the rationale of *Roberts Inc., supra,* is applicable and supports the same result contained in *IBEC Industries, supra. Roberts* involved bookkeeping entries reflecting transfers of equipment from a partnership to a corporation wholly owned by such partners and is analogous to the transfer among the corporate entities in the case *sub judice,* wherein the corporate subsidiaries are wholly owned by the parent corporation.

HOLMES, J., concurs in the foregoing concurring and dissenting opinion.