SOUTHWESTERN PORTLAND CEMENT COMPANY,
APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Southwestern Portland Cement Co. v.
Lindley (1981), 67 Ohio St. 2d 417.]

(No. 80-1748—Decided August 5, 1981.)

*Messrs. Frost & Jacobs, Mr. Dennis J. Barron* and *Mr. Michael F. Haverkamp,* for appellant.

*Mr. William J. Brown,* attorney general, and *Ms. Barbara E. Vest,* for appellee.

*Per Curiam.*

I.

The first issue presented is whether the Board of Tax Appeals properly ruled that the purchase of the clinker producing system, as evidenced by a single purchase agreement stating a single price, could be divided into taxable and non-taxable purchases for the purpose of tax assessment pursuant to R. C. 5739.01(E)(2).[1]

Appellant contends, in essence, that this division is unlawful because it purchased a system under one agreement and for one price. In addition, appellant argues that such a division violates the primary use test enunciated in *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, and the principle that there is no authority for the division of a single piece of equipment into its taxable and non-taxable parts when determining if it is excepted from sales tax. *Id.* at page 544.

It is irrelevant that the appellant had one contract with one prime contractor and paid one figure for its production line. The tax status of each purchase is dependent upon its use (see, generally, *White Motor Corp.* v. *Kosydar* [1977], 50 Ohio St. 2d 290) rather than on the method of purchase.

Likewise, appellant's claim that it purchased a "system" is not determinative of the taxation issue. Tax exemption by law is a function of the use of the items purchased and not a func-

---

[1] R. C. 5739.02 provides for an excise tax to be levied on each retail sale made in this state.

tion of nomenclature. Taxpayers cannot avoid paying proper sales and use tax merely by asserting that their purchases comprise a system which cannot be divided into taxable and non-taxable components.

Appellant's contention that its system is a single piece of equipment contemplated by this court in *Mead Corp.* v. *Glander, supra,* is not well taken. The clinker producing system at issue is easily divisible into units having distinct and separate functions. The crushing machines, the kiln, the preheater, and in fact, all the component parts can be examined for their respective connections with cement production.

More accurately, appellant's clinker producing system can be characterized as a plant and is even referred to as such in the purchase agreement. Indeed, the agreement itself recognized the divisibility of the system by listing the component systems and by attaching equipment lists as part of the agreement. Furthermore, the appellant acknowledged the divisibility of the system when it obtained and then used cost breakdowns for its own tax purposes.

Appellant's position that its system should be excepted precipitates into an assertion that a manufacturing plant must be considered a unitary system, *i.e.,* anything used necessary to the functioning of the system is directly used in manufacturing and, thus, excepted from taxation. Adoption of appellant's approach would require this court to accept the integrated plant theory. This theory has never been accepted in Ohio (see, *e.g., Youngstown Bldg. Material & Fuel Co.* v. *Bowers* [1958], 167 Ohio St. 363; *Ohio Ferro-Alloys Corp.* v. *Kosydar* [1973], 34 Ohio St. 2d 113), and we decline to adopt it now.

The General Assembly has imposed a duty on the Tax Commissioner, the Board of Tax Appeals and the courts of this state to except from taxation the purchase of only those items used directly in manufacturing. See, *e.g., Tri-State Asphalt Corp.* v. *Glander* (1950), 152 Ohio St. 497. Such a determination requires the dissection of every purchase to insure the proper application of legislative guidelines for tax exception.

Appellant further argues that "arbitrary" amounts have been assigned to the assessed machines. More specifically, appellant contends that the use of the itemized work orders as the basis for assessment is contrary to: (1) R. C. 5739.02,

which levies an excise tax on "each retail sale***if the price is in excess of one dollar"; (2) R. C. 5739.01(B), which defines "sale" as "all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred***"; and (3) R. C. 5739.01(H), which defines "price" as "the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, in the complete performance of a retail sale***."

The contract between appellant and the Fuller Company did not include itemized prices. The document from which the assessment was made is the cost breakdown of the clinker production line's component parts. This document was prepared upon appellant's request and relied upon by appellant for its own tax purposes. Appellant's claim that the assessments which were based on its own records were arbitrary is not well taken.

## II.

The primary substantive issue is whether the various assessed equipment obtained by the purchase of the clinker production system is excepted from taxation, under R. C. 5739.01(E)(2) and 5739.01(S), either as items used directly in manufacturing or as "adjuncts."

R. C. 5739.01 prescribes the requisites for the direct use exception as follows:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"****

"(2) ***[T]o use or consume the thing transferred directly in the production of tangible personal property***for sale by manufacturing, processing***."

"Manufacturing" and "processing" are defined in R. C. 5739.01(S) as follows:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

The basic test for determining whether particular items of property are excepted under R. C. 5739.01(E)(2) and (S) is stated in the syllabus of *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra,* as follows:

"* * *when does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing process or period.*" See, also, *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163.

This court has more fully defined these two steps. The first step of determining when the manufacturing process begins and ends includes a determination of whether the process at issue is an excepted one or one that is preliminary or preparatory to manufacturing. In *Interlake* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 459, this court stated the rule to be "[t]he manufacturing process for which a beginning and end must be determined is the one that produces the marketable product." See, also, *Ohio Ferro-Alloys Corp.* v. *Kosydar, supra.*

The second step of determining if the equipment is used "during and in" manufacturing includes a determination of whether the equipment may be classified as "adjunct" under R. C. 5739.01(S) when read *in pari materia* with R. C. 5739.01(E)(2). In order to except equipment as "adjunct," the equipment must be auxiliary to the manufacturing process and it must be used at the same location where the production is occurring, used after the transforming or conversion has commenced, and be related to direct use or consumption in production. *Canton Malleable Iron Co.* v. *Porterfield, supra, Hawthorn Mellody* v. *Lindley* (1981), 65 Ohio St. 2d 47; *Babcock & Wilcox* v. *Kosydar* (1976), 48 Ohio St. 2d 251.

In reviewing cases applying R. C. 5739.01(E)(2) and 5739.01(S), this court will not overrule board findings of fact which are based on sufficient probative evidence. R. C. 5717.04; see *Emery Industries* v. *Kosydar* (1975), 43 Ohio St. 2d 34; *Highlights for Children* v. *Collins* (1977), 50 Ohio St. 2d 186; *Hawthorn Mellody* v. *Lindley, supra,* at page 49. Moreover, this court has recognized that the Board of Tax Appeals is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses, and its determination will not be disturbed absent a showing of patent

abuse of discretion. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13, 19. This court must thus determine whether the board's decision as to numerous assessments was reasonable and lawful.

The assessments appealed can be grouped into two general classes of equipment. The first group of items are used at the clinker production facility. In analyzing whether these items are excepted under R. C. 5739.01(E)(2) and (S), the board was required to make two initial determinations. First, the board impliedly found the clinker production system to be in the manufacturing process since most of its equipment was excepted. This finding does not appear to be unreasonable. Secondly, the board's finding that the crushing of raw materials was the first step in the manufacturing process is likewise not unreasonable.

Appellant's contention that the board was unreasonable in refusing to except equipment used in the handling, storage and transportation of raw materials prior to crushing or of raw materials not crushed is not well founded. This court has consistently held that the mere transportation and storage of unchanged raw materials is not part of the manufacturing process. *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407; *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra; Ohio Ferro-Alloys Corp.* v. *Kosydar, supra.* Since the equipment is not excepted, the structures and foundations for this equipment should not be excepted. See, generally, *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra.*

The second group of contested assessments were those levied against the structures and foundations which supported or housed equipment, switchgear rooms and conveyor systems not assessed. Appellant argues that the foundations and structures cannot be separately taxed from its equipment. In essence, appellant asserts the integrated plant theory. For the reasons stated in part one of this opinion, we reject the integrated plant theory and find that the board was not unreasonable in its assessment.

The assessment of the plant communication system, ventilation system and potable water system for human consumption was also not unreasonable or unlawful. The board cor-

rectly found that these systems bear no relation to the actual manufacturing process.

The purpose of the processed water system used in the clinker production facility was to cool the gases which could damage the excepted machinery. Since the water cooled the gases and not the machine, the board was not unreasonable in finding that the cooling of these gases was not directly used in the manufacturing process.

The fuel oil distribution system was also assessed. This system is used as an auxiliary heat source for the kiln in the event the kiln does not produce sufficient heat. Since the fuel distribution system is auxiliary in nature and only used in emergency situations, the board's assessment is not unreasonable.

The assessment on the elevator to the preheater is supported by the holding in *Timken Co.* v. *Kosydar* (October 28, 1975), B.T.A. No. D-7, that catwalks, ladders, stairs, platforms and handrails which provided employees access to processing areas were "***neither used directly in or adjunct to***" production.

Finally, the assessment against the magnetic separators used to withdraw debris from crushed limestone and crushed coal is supported by Ohio Adm. Code 5703-9-21(B), which provides, in pertinent part:

"Production machinery***does not include any machinery***which disposes of scrap or waste materials."

The second group of assessed items contested by appellant consists of items used at the main plant. Appellant first contends that equipment used to convey wet cement from storage cars to trucks and railroad cars for shipment, and parts and equipment in palletizing machines should not have been assessed under R. C. 5739.02(B)(15).

R. C. 5739.02(B)(15) excepts from taxation:

"Sales to persons engaged in any of the activities mentioned in division (E)(2) of section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of machinery, equipment, and material for use in packaging tangible personal property produced for sale, or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans,

bottles, bindings, wrappings, and other similar devices and containers, and 'packaging' means placing therein[.]"

Appellant argues that the trucks and railroad cars are the "packages" for the wet cement. The General Assembly has listed packages to include "bags, baskets, cartons,***and other *similar* devices and containers." (Emphasis added.) A truck or railroad car is not at all similar to the devices listed in R. C. 5739.02(B)(15). Acknowledging the rule which requires strict construction of statutes relating to sales and use tax exceptions or exemptions (see, *e.g., Celina Mutual Insurance Co.* v. *Bowers* [1965], 5 Ohio St. 2d 12), this court holds that trucks and railroad cars cannot be termed "packages."

Appellant also contends that the palletizing equipment which bundles bags of dry cement onto pallets for shipment is used in packaging. This assessment is supported by the reasoning in *Hawthorn Mellody* v. *Lindley, supra,* wherein we stated, at pages 51-52, that conveyor systems for transporting milk cartons are not excepted because they merely "operated on" packages as opposed to "placing tangible personal property produced for sale in packages" which is required for exception. The palletizing equipment serves the same function by handling bags of cement.

The last item contested is replacement parts for an enclosed truck employed to remove dust from the kiln area. From the testimony presented, it appears that the truck transports dust already collected rather than removing dust directly from the machinery. Consequently, the board's assessment cannot be held to be unreasonable.

### III.

The final issue presented is whether the board's decision that the labor costs incurred in erecting the clinker producing plant were not exempt from taxation as installation charges pursuant to R. C. 5739.01(H) was reasonable and lawful.

R. C. 5739.01(H) provides that charges for installation and application of property sold can be excluded from price if separately stated:

" 'Price' means the aggregate value in money of anything paid or delivered, in the complete performance of a retail sale *without any deduction on account of the cost of property sold,*

*cost of* materials used, labor or service cost\*\*\*. Price does not include the consideration received for labor or services used in installing the property sold\*\*\**if the consideration for such services\*\*\*is separately stated* from the consideration received or to be received for the tangible personal property transferred in the retail sale. *Such separation must appear in the sales agreement or on the initial invoice or initial billing* rendered by the vendor to the consumer." (Emphasis added.)

This court has consistently held that statutes relating to sales and use tax exceptions or exemptions shall be strictly construed. See, *e.g., Celina Mutual Insurance Co.* v. *Bowers, supra,* paragraph one of the syllabus; *Ohio Ferro-Alloys Corp.* v. *Donahue* (1966), 7 Ohio St. 2d 29, 32; *Canton Malleable Iron Co.* v. *Porterfield, supra* (30 Ohio St. 2d 163), at page 166.

Only installation labor is excepted by R. C. 5739.01(H). This section does not purport to exclude from the price the labor costs involved in manufacturing or constructing the product to be sold.[2] As such, it follows that the General Assembly intended to include in price all costs of production and performance of the contract, except those costs incurred in installing or applying the product.

The performance of the contract in this case required both fabrication labor and installation labor. The contract called for the Fuller Company to erect a continuous dry process clinker-producing facility capable of meeting certain specifications. The system was to be delivered to appellant in operable condition.

Testimony was offered to the effect that the component parts of the clinker facility were partially manufactured by the Fuller Company and its subcontractors and then shipped to the appellant's site for final assembly. Fuller and its subcontractors began fabrication in their plants but finished fabrication on appellant's site. The pieces of machinery and equipment had to actually be put together at the site to form the crushers, kiln and pre-heater structure.

---

[2] The General Assembly has not defined "installing" for the purpose of this section. The general rule, as stated in R. C. 1.42 is that:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

Thus, it is clear that more than installation was involved. Hence, the cost of fabrication was reasonably and lawfully included in the "price" of the assessed portions of the clinker facility.

In addition, appellant failed to comply with the procedures set forth in R. C. 5739.01(H). This section requires installation costs to be stated separately from fabrication or labor costs. The labor charges on the work orders do not make this distinction. Moreover, R. C. 5739.01(H) requires that said "separation must appear on the sales agreement or on the initial invoice or billing***." Since work orders are not equivalent to a sales agreement, invoice or billing, appellant's claim must fail.

For the foregoing reasons, the decision of the Board of Tax Appeals being reasonable and lawful is affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES and C. BROWN, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part.

I concur in that part of the majority opinion which holds that the assets of this production plant are divisible for purposes of determining their taxable status.

I cannot agree, however, that the Tax Commissioner and the Board of Tax Appeals were correct in their analysis as to all such equipment. I am willing to agree that the plant communication system, the ventilating system, and the potable water system for human consumption were not used directly in the manufacturing process, and therefore were taxable. Also, it would appear that the board did not abuse its discretion in finding, on the basis of *Timken Co.* v. *Kosydar* (October 28, 1975), B.T.A. No. D-7, that the catwalks, ladders, stairs, platforms and handrails which provided employee access to processing areas, were taxable. I am also in agreement concerning the taxability of the railroad cars, the palletizing machine and the enclosed truck.

However, as to the other items, I cannot agree. The structures and foundations which supported and housed the equip-

ment used in production should be considered as being used directly in the manufacturing process.

The water processing system used to cool the gases should be considered exempt. Also the fuel oil distribution system, even though an auxiliary system, should be considered as used directly in the manufacturing process.

The magnetic separators used to withdraw debris from the crushed limestone and crushed coal should not be classified as machinery which disposes of scrap or waste materials which would be taxable. The separators were used during the manufacturing process, not after such process.

I also conclude that the labor costs incurred in erecting the clinker producing plant were exempt from taxation as installation charges pursuant to R. C. 5739.01(H).

Accordingly, I would modify the order of the Board of Tax Appeals.

C. BROWN, J., concurs in the foregoing concurring and dissenting opinion.