**MENNEL MILLING COMPANY, Appellant,**

v.

**LIMBACH, Tax Commr., et al., Appellees.**

[Cite as *Mennel Milling Co. v. Limbach* (1991), 72 Ohio App.3d 330.]

Court of Appeals of Ohio,
Hancock County.

No. 5–89–4.

Decided Jan. 31, 1991.

*Timothy A. Konileczny,* for appellant.

*M. Linda Weigand,* Assistant Attorney General, for appellee.

EVANS, Judge.

This is an appeal by the taxpayer, Mennel Milling Company (Mennel), from a decision and order of the Board of Tax Appeals, affirming in part the Journal Entry of the Tax Commissioner, which found the taxpayer liable for sales and use taxes on certain purchases of equipment and supplies used by the taxpayer in the operation of the company business.

The audit period involved in this case extends from January 1, 1980 through December 31, 1982. There are three fundamental questions involved in this

appeal.  The first involves the exemption for purchases used directly in the manufacturing process.  The second involves the exemption for equipment and material used to package the tangible personal property produced for sale.  The third involves materials which may be adjunct to the manufacturing process.

Our standard of review in this case is fixed by statute.  We must review the record and the evidence upon which the decision of the Board of Tax Appeals is based to determine whether the decision is reasonable and lawful.  If it is we must affirm.  But if we decide that the decision of the board is unreasonable or unlawful this court must reverse and vacate or modify the decision and enter final judgment.  See R.C. 5717.04.  In addition we must be guided by the rules of construction announced by the Supreme Court in *National Tube Co. v. Glander* (1952), 157 Ohio St. 407, 409, 47 O.O. 313, 314, 105 N.E.2d 648, 650, that "[t]he presumption prevails that every sale or use of tangible personal property in this state is taxable.  Moreover, laws relating to exemption from taxation are to be strictly construed, and one claiming an exemption must affirmatively establish his right thereto."  (Citations omitted.)

The taxpayer asserts six assignments of error in this appeal, the first of which is as follows:

"The Board of Tax Appeals erroneously failed to apply Ohio Revised Code Section 5739.02(B)(16) to exempt from sales and use taxes those components of Mennel's operations which manufacture animal feed."

Mennel is in the business of milling wheat in specific quantities to produce flour which will meet the specifications of a customer.  To do this Mennel withdraws different varieties of wheat from several storage bins in an exact ratio and passes the wheat into a closed conveyor where the varieties are blended into a uniform mixture which, when the milling process is completed, will produce the type of flour specified by the customer.

One of the first steps in the milling process is the cleaning of the grains of wheat and the removal of all impurities such as weed seeds, pieces of straw, stones and malformed and broken kernels of wheat.  This material is collected by a vacuum system and transported to a grinder where it is pulverized into a material which is sold for manufacture into animal feed.

The Board of Tax Appeals held that the manufacturing process for the production of flour begins with the blending of wheat as it is removed from the bins.  The taxpayer contends that the manufacturing process for animal feed begins at the same time and therefore the vacuum system which collects the ingredients of the animal feed and conveys them to the grinder is exempt

from sales tax under the provisions of R.C. 5739.02(B)(16). This statute exempts:

"Sales to persons engaged in manufacturing, processing, assembling or refining, of handling and transportation equipment, * * * used in intraplant or interplant transfers or shipments of tangible personal property in the process of production for sale by manufacturing, processing * * *."

R.C. 5739.01(R) defines "manufacturing" and "processing" as " * * * the transformation or conversion of material or things into a different state or form from that in which they originally existed * * *."

When we apply these definitions to the facts of this case, it is apparent that the manufacturing activity for the animal feed does not begin at the same time as the manufacturing activity for flour. There is no evidence in the record that any of the wheat is intentionally directed to the grinder in order to produce a specific amount of animal feed for sale. Rather the amount of animal feed produced is entirely a function of the amount of waste generated as the wheat is cleaned for the production of flour.

Furthermore, the record does not indicate that there is a transformation or conversion of any of the material removed from the wheat during the cleaning process until that material reaches the grinder.

We think the following language from the case of *Ford Motor Co. v. Limbach* (1987), 32 Ohio St.3d 136, 138, 512 N.E.2d 658, 660, is especially pertinent:

"Appellee's sole purpose for running the stamping equipment is to produce automotive stampings to be incorporated into its cars and trucks. Although appellee may find it profitable to sell the scrap metal by-product which results from its stamping operation, we find that the transformation of shape and form which takes place in the stamping press relates to the formation of automotive stampings, not scrap metal chips. The metal chips are the raw material for baled scrap and this material does not undergo a transformation in shape and form until it is compressed in appellee's baler facility."

Accordingly, we find that the vacuum equipment does not perform a function which qualifies it for exemption under R.C. 5739.02(B)(16). The decision of the Board of Tax Appeals as to the exemption of the vacuum system is reasonable and lawful. The assignment of error is overruled.

Appellant asserts for its second assignment of error:

"The Board of Tax Appeals erroneously failed to apply Ohio Revised Code Section 5739.02(B)(15) to exempt from sales and use taxes components of Mennel's packaging operations."

The elements of the packaging operation of the taxpayer which are at issue under this assignment of error are the following:

1. Conveyor belting, bolts and v-belts for a packaging conveyor system.

2. Poly-sheet coverings, shock-sorb paper and seals.

3. Adhesives.

4. Assorted boxes and poly-bags.

5. Detia gas.

6. Toledo scales.

7. Truck washes.

██ Appellant claims exemption under the language of R.C. 5739.02(B)(15).

"The tax (sales or use tax) does not apply to the following:

" * * * Sales to persons engaged in any of the activities mentioned in division (E)(2) of section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of machinery, equipment, and material for use in packaging tangible personal property produced for sale, or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers and 'packaging' means placing therein."

Under this statute, equipment or machinery is exempt only if it is used in placing tangible personal property produced for sale in packages. The equipment must be an integral part of the actual packaging process to be exempt.

██ The conveyor belting, bolts and v-belts for the conveyor system at issue here are used to move one-hundred-pound or fifty-pound bags of flour away from the bagging equipment to a point where the bags of flour are collected on pallets for shipment to customers. The taxpayer presented the following testimony as to the use of the conveyor:

"Turning now to the packaging portion of our business. The items described were conveyor belting, bolts and v-belts for the conveyor system. They are used to convey our finished package from the point of view of flour being in a package, a 100–pound bag, to the pallet where they become the totally finished package of the material a customer will receive.

"So the conveyor belting, the v-belts that drive it, and that conveyor system carry a 100–pound bag or 50–pound bag of product flour or cereal product to the area where it is palletized.

"Q. By that you mean further packaging to be palletized?

"A. I do."

"Q. What is done?

"A. The worker takes the bag from the end of the conveyor belt, which happens to be in another building, places the filled bag onto a pallet, and the pallet is built to whatever height the customer requires or the load side requires. Adhesive is applied as the layer is built, and when the pallet is built to the desired height in the truck or the car, then the load is covered with the shock-sorb paper or cardboard type paper and the load is finished."

The taxpayer relies on *Hawthorn Mellody v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, in support of its claimed exemption. We find this significant statement in *Hawthorn Mellody, supra,* at 52, 19 O.O.3d at 238, 417 N.E.2d at 1261: "To be excepted from taxation under R.C. 5739.02(B)(15), machinery or equipment must be used in placing tangible personal property produced for sale in packages."

In the case presently under consideration the record clearly shows that the conveyor in question does not convey the bags of flour all the way to the pallet and place them thereon. For this reason the conveyor falls short of the *Hawthorn Mellody* test and is not entitled to exemption under R.C. 5739.-02(B)(15).

■ The taxpayer contends that poly-sheet coverings, shock-sorb paper and seals are all exempt as part of the packaging operation of the taxpayer. The poly-sheet coverings are used to cover the hatch openings in a bulk flour truck before the hatch is closed. This seals the opening and prevents contamination of the flour. The shock sorb paper is used to cover palletized bags of flour to eliminate damage to the bags and to protect the bags from drops of water during transit. The seals are used to close the discharge openings of a bulk flour truck to assure the customer that the discharge opening has not been tampered with during transit.

The taxpayer also argues in its brief that these items are entitled to exemption because they are necessary to maintain the flour in a useable form until delivered to the customer, citing *Hawthorn Mellody, supra,* and *OAM-CO v. Lindley* (1986), 24 Ohio St.3d 124, 24 OBR 347, 493 N.E.2d 1345, on rehearing (1986), 27 Ohio St.3d 7, 27 OBR 427, 500 N.E.2d 1379, on motion for clarification (1987), 29 Ohio St.3d 1, 29 OBR 122, 503 N.E.2d 1388.

We will not consider this argument because the cited cases grant an exemption for equipment used to preserve the product in useable form as an adjunct to property used or consumed directly in the production of tangible personal property under R.C. 5739.01(E)(2). The error assigned as to the items presently under consideration was the failure to grant exemption under R.C. 5739.02(B)(15).

The board found that all of these items were used to protect the product in transit and did not constitute packaging.

There is nothing in the record which would enable us to find the decision of the board to be unreasonable or unlawful. We conclude that these items do not qualify for the packaging exemption.

■ The taxpayer uses an adhesive to secure bags of flour to pallets and to each other to make the pallet more stable during transport.

In the proceedings for reassessment before the Tax Commissioner, the taxpayer described part of its packaging procedure as follows:

"The pallets are food grade pallets prescribed by the Grocery Manufacturers Association. There are part of the packages which contain the bags of flour for delivery to customers. The adhesives are used to glue the individual bags of flour to one another and, in many instances, to the pallet so they are more stable in transport."

In the determination of the Tax Commissioner dated August 4, 1986, we note that the pallets were exempted and the proposed tax thereon was deducted from the assessment. If the pallets are exempt as part of the package which holds bags of flour for shipment, then the adhesive which secures the bags to the pallet and the bags to each other should also be exempt as part of the package.

We reverse the decision and order of the Board of Tax Appeals with respect to the adhesive used to secure bags of flour to pallets and to each other and hold that this item is exempt under R.C. 5739.02(B)(15), except for the period from January 1, 1981 through June 30, 1981 when the statute was temporarily repealed.

■ The taxpayer uses assorted boxes and poly-bags to ship samples of flour to customers or to laboratories for analysis or testing. The board denied exemption for these items because even though these items would qualify as packages within the meaning of R.C. 5739.02(B)(15), the product placed therein was not sold but rather was sent free of charge.

■ We conclude that the decision of the board is both reasonable and lawful as to this element of the case.

The taxpayer uses a Toledo scale to weigh 1,000–pound units of flour when preparing a shipment of flour in bulk. After being weighed the flour passes into a mechanical sterilizer and then into the bulk railroad car or truck for transport. This flour is not otherwise bagged or packaged. The railroad car or truck is the vessel in which the flour goes to market.

The Board of Tax Appeals rejected the claim of exemption for the Toledo scale on the ground that the packaging process was complete when the scale was used. This is an unreasonable decision on the part of the board. The record shows that the scale is used to weigh bulk flour which has not been and never will be packaged other than being deposited in its loose form into a bulk conveyor for delivery to the customer.

The Toledo scale is exempt as equipment used in placing tangible personal property for sale in the bulk carrier which will transport it to the customer. The taxpayer could not be expected to sell its product without first weighing it to determine that the customer's order was properly filled.

We reverse the decision and order of the Board of Tax Appeals with respect to the Toledo scale and hold that this item is exempt under R.C. 5739.02(B)(15), except for the period from January 1, 1981 through June 30, 1981 when the statute was temporarily repealed.

We now consider the truck washes. Appellant argues in its brief that the truck washes are necessary to maintain the truck's cleanliness for the transportation of bulk flour; therefore, a packaging exemption is appropriate, as well as a manufacturing exemption under R.C. 5739.01(E)(2). The packaging exemption must be denied because a truck is not a package. *Southwestern Portland Cement Co. v. Lindley* (1981), 67 Ohio St.2d 417, 424, 21 O.O.3d 261, 265, 424 N.E.2d 304, 309. The exemption under R.C. 5739.01(E)(2) must also be denied because the appellant relied solely on the packaging exemption in the assignment of error.

This assignment of error is well taken as to the adhesive and the Toledo scale. As to all other items raised therein the assignment of error is overruled.

Appellant's third assignment of error is:

"The Board of Tax Appeals erroneously failed to exempt from sales and use taxes the items necessary to fumigation of Mennel's flour mill."

From time to time the taxpayer must seal the doors and windows of its mill and fumigate the entire building to avoid insect infestation which would contaminate the flour during production. During the fumigation period no milling takes place. The taxpayer claims exemption on the ground that fumigation is necessary to ensure that the product will be delivered in a form usable for human consumption and relies on *Hawthorn Mellody, supra,* and *OAMCO, supra,* in support of its position.

To qualify for exemption the materials used to fumigate the mill must be used directly in the manufacturing process or qualify as an adjunct to something used directly in the manufacturing process. *White Motor Corp. v.*

*Kosydar* (1977), 50 Ohio St.2d 290, 304, 4 O.O.3d 451, 458, 364 N.E.2d 252, 259. No doubt the fumigation of the mill is necessary but we find no direct connection with the manufacturing process.

The assignment of error is not well taken.

The taxpayer's fourth assignment of error is as follows:

"The Board of Tax Appeals erroneously failed to exempt from sales and use taxes those items purchased by Mennel used primarily for the protection of employees pursuant to Ohio Administrative Code Section 5703-9-21."

The items at issue under this assignment are an eye wash station and safety signs which were posted throughout the plant. Taxpayer contends that these items are exempt under the wording of Ohio Adm.Code 5703-9-21(N), which provides:

"Persons engaged in the production of tangible personal property for sale by manufacturing, processing, assembling or refining, may claim exemption when purchasing:

" * * *

"(N) articles used primarily for the protection of a production employee from a physical danger of the operation in which he is engaged, when such article is installed, or furnished to and used by the employee for his personal protection without charge by the employer."

The eyewash station was installed to protect employees engaged in changing batteries in forklift trucks. As the batteries are removed they are recharged before reuse. During this process it is possible that a battery could explode and splash acid over an employee. Thus, the eyewash station is installed for employee protection; the claim for exemption fails because these employees are not engaged in the production of flour when changing batteries. Thus, they are not production employees. The language of the Administrative Code section set forth above limits its application to production employees.

The safety signs also fail to qualify for exemption because they do not actually protect production employees from physical danger.

The assignment of error is not well taken.

The taxpayer asserts the following for his fifth assignment of error:

"The Board of Tax Appeals erroneously failed to exempt from sales and use taxes a man-lift belt and refrigerator which are used by Mennel as adjuncts in the production of flour."

The taxpayer argues that the manlift elevator is entitled to exemption because it is essential to move production employees quickly from floor to

floor in order to maintain the production process. As such, the manlift elevator is either directly used in manufacturing or is at least in adjunct to the production of flour.

In *Southwestern Portland Cement Co., supra,* 67 Ohio St.2d at 423, 21 O.O.3d at 265, 424 N.E.2d at 308, the Supreme Court held that equipment which provides access to processing areas is neither used directly in nor adjunct to production. Thus, the decision of the board in refusing exemption is neither unreasonable nor unlawful.

The taxpayer asserts that a refrigerator used to store test chemicals is entitled to exemption as an adjunct under R.C. 5739.01(R). These chemicals are used to test the flour during production and must be refrigerated during storage.

Under the provisions of R.C. 5739.01(R)(2), adjuncts include machinery and equipment used during the manufacturing period to test or check the quality of the thing being manufactured. Nevertheless the refrigerator is not used to test the quality of the flour. It is used to maintain the test chemicals in good condition during storage.

In *White Motor Corp., supra,* at 304, 4 O.O.3d at 458–459, 364 N.E.2d at 259–260, we find the following explanation:

" * * * Thus, while the apparatus on the production line which sprays the coolant upon the interface between the tool and the component is an 'adjunct' to manufacturing, and the coolant is directly used or consumed in manfacturing [*sic*], the recirculating system is not adjunct to items that are directly involved in the manufacturing process.

"The board concluded as follows:

" ' * * * To be excepted as adjuncts, these items would need to be adjunct to items that are directly involved in the manufacturing process; that is, they would need be auxiliary or subsidiary to such primary items, supplementing the function of the items that are directly involved. The items of the recirculating system do not perform such a task. They merely deliver oil-coolant that can be regarded as either used directly or adjunct to some article that is used directly to the production line and *do not aid or assist these delivered oil-coolants as these oil-coolants perform their function.* The presence of the compounds at the point of manufacture is the *sine qua non* of manufacturing at that location, or without which the equipment at that location could not operate as facilely as if the compound were absent. The method of delivery to the point of manufacture is of no import once the oil-coolant has arrived "and the lack of this particular and necessary nexus is fatal to the exception urged" * * *.' " (Emphasis added.)

If we equate the refrigerator to the delivery system for the coolant we find that the refrigerator does aid the test chemicals to perform their function. Without refrigeration the chemicals would lose their effectiveness and be worthless as test reagents.

We conclude that the decision of the board in refusing to exempt the refrigerator is unreasonable. We reverse the decision and order of the Board of Tax Appeals with respect to the refrigerator and hold that this item is exempt under R.C. 5739.01(R)(2).

The assignment of error is overruled as to the manlift elevator and sustained as to the refrigerator.

The taxpayer asserts the following for its sixth assignment of error:

"The Board of Tax Appeals erroneously failed to reduce the amount of tax assessed pursuant to a determination of the Tax Commissioner that Mennel's tempering system, transportation system, pallets and maintenance items were exempt from said taxation."

Upon review of the original assessment the Tax Commissioner found certain items to be exempt. Accordingly, the tax was reduced but the taxpayer contends that the amount of the reduction was incorrect.

The Board of Tax Appeals refused to make any adjustment to the assessment because the taxpayer did not introduce any evidence to show that the action of the Tax Commissioner was erroneous.

Without some evidence to support the contention of error on the part of the Commissioner we are unable to find the decision and order of the board to be unlawful or unreasonable.

The assignment of error is overruled.

Having found the decision and order of the Board of Tax Appeals to be unreasonable or unlawful in part, we reverse the board's decision with respect to the adhesive, Toledo scales and the refrigerator. As to all other matters the decision of the board is affirmed.

*Decision reversed in part*
*and affirmed in part.*

SHAW, P.J., and MILLER, J., concur.