OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.


Gray Horse, Inc., Appellant, v. Limbach, Tax Commr., Appellee.

[Cite as Gray Horse, Inc. v. Limbach (1993), Ohio St.3d .]

Taxation -- Franchise tax -- Board of Tax Appeals decision affirming Tax Commissioner's order that increases corporation's value, under the net-worth basis of the franchise tax, of the shares of stock the corporation held in a subsidiary reversed, when.

(No. 92-1775 -- Submitted April 27, 1993 -- Decided July 14, 1993.)

Appeal from the Board of Tax Appeals, No. 89-M-33.

Gray Horse, Inc., appellant, challenges the Tax Commissioner's, appellee's, order that increases the value, under the net-worth basis of the franchise tax, of the shares of stock Gray Horse held in a subsidiary. This action increases its franchise tax.

Since 1976, when James M. Osborne and Alice Q. Osborne incorporated Gray Horse, Gray Horse has recorded the value of the shares contributed to it in Osborne Estates Company and Panhandle Eastern Pipe Line Company, both formerly owned by the Osbornes, at the cost or tax basis of the stock, $989,103.60. Gray Horse obtained this valuation from source documents it received from the Osbornes and, from its incorporation, has recorded this same valuation on columnar work sheets. Gray Horse reported the value of the shares under this method on its 1984 franchise tax return, with fiscal year ending June 30, 1983, and its 1985 franchise tax return, with fiscal year ending on June 30, 1984.

However, for the corresponding federal tax years, 1982 and 1983, Gray Horse reported the value of the stock as $4,925,798 and $5,131,166.23, respectively. Gray Horse based this value on one-half of the market value of the stock in Panhandle, which had acquired the shares of Osborne Estates in a reorganization. According to the accountant who prepared these returns, Gray Horse valued the shares in this manner to establish some substance for the corporation which would justify the $100,000 salary paid Mr. Osborne, who managed the underlying assets. Gray Horse reported these values only on

these federal returns, and these values did not affect Gray Horse's federal income tax other than to support the salary deduction.

The commissioner compared the federal returns with the franchise tax returns and increased the value of the stock to the amounts reported on the federal returns.

Gray Horse appealed, and the Board of Tax Appeals ("BTA") affirmed.  The BTA concluded:

"* * * Although the tax basis method of accounting is a generally accepted and recognized method of accounting, the taxpayer cannot use this method for its Ohio Franchise Tax Returns since he [sic] did not use this method for its Federal Income Tax Returns.

"Furthermore, to afford the taxpayer the luxury of inflating the value of its stock for federal income tax purposes to receive certain benefits and using the book value of the stock for Ohio Franchise tax purposes to receive other benefits would afford the taxpayer a windfall.  Appellant's witness admits he inflated the value of the stock for federal income tax purposes so that the corporation would have the substance to pay a shareholder a $100,000 salary for managing corporate affairs.  The corporation, in fact, did pay the shareholder the salary, which appears to have been unchallenged by the Internal Revenue Service.  As the corporation procured a benefit from its method of accounting, we find that it is not unreasonable to require the corporation to consistently report its asset valuation.  See: National Tube Co. [v. Peck], supra [(1953), 159 Ohio St. 98, 50 O.O. 74, 111 N.E. 2d 11]."  (Emphasis added.)

The cause is before this court upon an appeal as of right.

Jones, Day, Reavis & Pogue and John C. Duffy, Jr., for appellant.

Lee I. Fisher, Attorney General, and Steven L. Zisser, Assistant Attorney General, for appellee.

Per Curiam.  R.C. 5733.06 calculates the franchise tax on the net-worth and net-income bases and charges the corporation the higher amount.  R.C. 5733.05(A) sets forth the value of the issued and outstanding shares of stock of a taxpayer under the net-worth basis as:

"The total value, as shown by the books of the company, of its capital, surplus, whether earned or unearned, undivided profits, and reserves * * *."  (Emphasis added.)

In Natl. Tube Co. v. Peck, supra, paragraphs three, four, and five of the syllabus, we stated:

"3. The book value of an asset at any given time may be more or less than its value.  (Paragraph nine of the syllabus in Opdyke v. Security Savings & Loan Co. [1952], 157 Ohio St., 121 [47 O.O. 97, 105 N.E. 2d 9], approved and followed.)

"4. In the absence of statute, the books of account and bookkeeping records of a business may legally be kept and maintained in accordance with any sound and generally recognized and approved accounting system.

"5. Under Sections 5497 [now R.C. 5733.03] and 5498 [now R.C. 5733.05], General Code, 'book value' should be determined from the books of a corporation which are generally regarded as

the accounting records of such corporation and are kept in the ordinary course of the business of the corporation in accordance with any sound and generally recognized and approved accounting system, even though other records of the corporation may disclose that the market value of some of the assets of the corporation differs from the value thereof recorded in such books.  (Paragraphs one, two and three of the syllabus in Wheeling Steel Corp. v. Evatt, Tax Commr. [1944], 143 Ohio St., 71 [28 O.O. 21, 54 N.E. 2d 132], approved and followed.)"

Gray Horse argues that it reported the value of these shares on the franchise tax returns according to generally recognized and approved accounting methods.  The commissioner responds that Gray Horse did not establish that it had so reported these values and that the BTA correctly affirmed her order.  We agree with Gray Horse and reverse the BTA's decision.

The BTA's factual finding undermines the commissioner's argument.  The BTA determined that the tax-basis method, on which basis Gray Horse accounted for the transfer of the shares to it in 1976, listed the shares in its records since then, and reported the value of these shares in all its franchise tax returns, is a generally accepted and recognized method of accounting.  This finding has record support.  Two certified public accountants testified that this was an acceptable method to report the shares.  We do not overrule findings of fact of the BTA that are based upon sufficient, probative evidence. Hawthorn Mellody, Inc. v. Lindley (1981), 65 Ohio St.2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257.

On the other hand, both accountants testified that the hybrid valuation of the shares for the federal tax returns was not a generally accepted accounting practice.  The accountant who prepared the returns testified that he created this value to justify a salary expense; the other accountant, who testified as an expert, stated that he had not seen the federal valuation method before.

Moreover, we fail to detect the windfall for Gray Horse that prompted the BTA's finding.  Reporting an inflated value to justify a $100,000 salary may have avoided the Internal Revenue Service's questioning this expense and spared Gray Horse the cost of withstanding an audit.  However, the justification for this salary expense stands or falls on the effort Osborne expended to manage the assets, not the value of Gray Horse's holdings.

As to inconsistency with the federal return, R.C. 5733.031(B), cited by the BTA in support of its decision, requires a taxpayer's accounting method under R.C. 5733.05(B), the net-income basis for the franchise tax, to be consistent with its accounting method for the federal income tax.  R.C. 5733.031(B) does not mention R.C. 5733.05(A), the net-worth basis.  R.C. 5733.031(B) does not require that the net-worth accounting method be consistent with the federal return method.

Accordingly, under the above authority, we reverse the decision of the BTA because the decision unlawfully increases the value of shares held by Gray Horse above the value carried on Gray Horse's books, which Gray Horse kept under a sound and generally recognized and approved accounting system.

Decision reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.