COLEMAN YOUNG MOTORS, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

(No. 12-189—Decided August 1, 1988.)

*Edward G. Bohnert* and *J. Ross Haffey, Jr.,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Martha Jane Cooper,* for appellee.

STILLMAN, J. The appellant, Coleman Young Motors, Inc., is an Ohio corporation having its principal place of business in Mentor, Ohio. It is a motor vehicle dealership which makes retail sales of motor vehicles to business and nonbusiness consumers. As a result of an audit of its personal property tax returns for 1979, 1980 and 1981, appellee, Tax Commissioner of Ohio, adjusted appellant's Schedule 3-A personal property tax inventories to include the value of "direct sale" new vehicles. Due to the increased personal property valuation resulting from the adjustment, the Tax Commissioner issued an assessment on April 25, 1984, for unpaid personal property taxes. The Tax Commissioner also assessed penalties and additional charges against the appellant pursuant to R.C. 5711.27.

The appellant timely appealed from the Tax Commissioner's determination to the Board of Tax Appeals ("board"). After an evidentiary hearing held before the board on August 7, 1985, and upon review of the record, the board issued a decision and order on March 30, 1987, affirming the determination of the Tax Commissioner.

The appellant has timely appealed the decision and order of the board in this court pursuant to R.C. 5717.04 and presents two assignments of error:

"1. The Board of Tax Appeals' finding that the appellant-taxpayer is the owner, possessor and controller of 'direct sales' new vehicles at the moment they are delivered to appellant's lot from the manufacturer and conclusion that the appellant-taxpayer improperly excluded the value of said vehicles from its personal property tax returns are against the manifest weight of the evidence and contrary to law.

"2. The Board of Tax Appeals' finding that the assessed penalties and additional charges against taxpayer-

appellant should not be remitted is against the manifest weight of the evidence and contrary to law."

We reject both assignments of error.

The appellant alleges that two types of sales were made during the audit period. The first type is an "inventory sale" in which a motor vehicle is shipped from the manufacturer to appellant's lot, purchased by appellant, and held there until sold to a consumer. The second type is a "direct sale" in which the consumer orders the vehicle directly from the manufacturer. The vehicle is shipped to appellant's lot to hold until delivery to the particular customer. Appellant argues that "direct sale" vehicles are not "owned" or "controlled" by the motor vehicle dealer for purposes of personal property tax pursuant to R.C. 5711.03. Appellant further contends the board's finding that appellant is the owner, possessor and controller of "direct sale" new vehicles and argues that the board's conclusion that the appellant improperly excluded the value of such vehicles from its personal property tax inventories is against the manifest weight of the evidence and contrary to law.

R.C. 5711.03 provides in pertinent part:

"Except as provided in sections 5711.01 to 5711.36 of the Revised Code, *all taxable property shall be listed as to ownership or control,* valuation, and taxing districts * * *. The subsequent transfer of any taxable property shall not authorize any taxpayer to omit the same from his return nor the assessor to fail to assess the same in the manner required, although such return or assessment is not made until after such transfer. When a person or taxpayer engages in business in this state on or after the first day of January, in any year, he shall list all his taxable property, except inventory, as to value, ownership and taxing districts as of the date he engages in business. * * *" (Emphasis added.)

R.C. 5711.15 provides:

"A merchant in estimating the value of the personal property held for sale in the course of his business shall take as the criterion the average value of such property, as provided in this section of the Revised Code, which he has had in his *possession or under his control* during the year ending on the day such property is listed for taxation, or the part of such year during which he was engaged in business. Such average shall be ascertained by taking the amount in value on hand, as nearly as possible, in each month of such year, in which he has been engaged in business, adding together such amounts, and dividing the aggregate amount by the number of months that he has been in business during such year.

"As used in this section a 'merchant' is a person who *owns or has in possession or subject to his control* personal property within this state with authority to sell it, which has been purchased either in or out of this state, with a view to being sold at an advanced price or profit, or which has been consigned to him from a place out of this state *for the purpose of being sold at a place within this state.*" (Emphasis added.)

If this court decides that the decision of the board is reasonable and lawful, it must affirm, but if this court decides that such decision is unreasonable or unlawful, it must reverse and vacate the decision or modify it and enter final judgment in accordance with such modification. R.C. 5717.04. The court of appeals is bound by the record that was before the board and may not substitute its judgment for that of the board. *Olt* v. *Porterfield* (1969), 19 Ohio App. 2d 211, 48 O.O. 2d 343, 250 N.E. 2d 764. Reviewing

courts will not overrule findings of fact of the board that are based upon sufficient probative evidence. *Hawthorn Mellody, Inc.* v. *Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257.

In the instant cause, the board's findings and conclusions were as follows:

"* * * [W]e expressly find that appellant becomes the owner, possessor and controller of the 'direct sales' new vehicles at the moment they are delivered to appellant's lot from the manufacturer. The appellant remains the owner until such time as said vehicles are titled in the name of the ultimate consumer. We reject appellant's arguments as they are inconsistent with the foregoing finding.

"In consideration of the foregoing, we further find that appellant improperly excluded the value of the 'direct sales' new vehicles from its Schedule 3A inventories for the involved tax years. Pursuant to R.C. sections 5711.03 and 5711.15, the value of the 'direct sales' new vehicles should have been included in appellant's Schedule 3A inventories as appellee so determined. Appellee's certificate of determination is affirmed in this regard."

The board's findings of fact are based upon sufficient probative evidence in the record and its decision affirming the Tax Commissioner's finding is neither unreasonable nor unlawful. At the evidentiary hearing, appellant's owner and president, Bernard R. Coleman, testified on behalf of appellant. His testimony indicated the following course of business transactions.

"Direct sales" are primarily made to business consumers, such as utility companies purchasing a fleet of vehicles, but "direct sales" are also made to individual consumers. In the case of individual consumers, a buyer's order is signed at the dealer's lot. In the case of fleet sales, the fleet customer contacts the various automobile manufacturers who send fleet sales representatives to negotiate with the customer as to the make of vehicle and desired equipment or options meeting the customer's needs. Negotiation also relates to the base price of the vehicle and the amount of manufacturer's rebate to be offered. If, for example, Chrysler vehicles are selected, the customer and sales representative prepare an order form. The customer then sends out bids to all Chrysler dealers in the area, specifying the make of the vehicles and the various equipment or options desired, but without specifying the price the customer is willing to pay. The Chrysler dealers respond to the bid by filling in a price quote, which specifies either a total price per vehicle or the amount in excess of the manufacturer's invoice that the dealer is willing to accept. The dealer winning the bid notifies Chrysler to ship the vehicles to its dealership lot. The record further recites the following statements contained in the board's decision and order:

"While testifying on cross-examination by counsel for appellee, Mr. Coleman stated the following about 'direct sales' vehicles:

"1. After an order for a fleet of vehicles or a single vehicle has been completed by the manufacturer, the vehicles are delivered to appellant with a manufacturer's statement of origin. At this point, the vehicles are titled in the name of the appellant. For purposes of Ohio motor vehicle law, appellant is the title owner.

"2. Upon delivery to appellant, appellant performs routine dealer's preparation to make the car ready for delivery to the consumer.

"3. Appellant delivers the vehicle to the consumer. The appellant then

bills the consumer for the purchase price, as well as a charge for dealer's preparation. Also, the vehicle's title is placed in the consumer's name. The title will evidence that appellant is the previous owner.

"4. Appellant does make a profit on 'direct sales' transactions. That is, appellant receives more than the charge assessed for dealer preparation.

"5. It is unclear whether appellant would be obligated to pay the sale price to the manufacturer where the consumer fails to take delivery of and pay for 'direct sales' vehicles. However, Mr. Coleman believes that he would not have to pay the sale price in such a situation."

Although there is no case law or other authority on this issue to provide guidance to this court, there is sufficient probative evidence in the record to warrant the conclusion that appellant owned or had in its possession or under its control personal property held for sale in the ordinary course of business. This court therefore holds that the board's decision that appellant improperly excluded the value of "direct sale" new vehicles from personal property tax inventories was both reasonable and lawful. We therefore overrule the first assignment of error.

Appellant's second assignment of error contends that the finding of the board that the penalties and additional charges assessed by the Tax Commissioner should not be remitted is against the manifest weight of the evidence and contrary to law. Appellant alleges that the evidence established that its failure to include the "direct sale" new vehicles in the personal property tax inventories was due to reasonable cause and, further, that the board improperly held that it was without authority to remit penalties and additional charges absent a showing that the Tax Commissioner's failure to remit the same constitutes an abuse of discretion. R.C. 5711.27 provides in pertinent part:

"No taxpayer shall fail to make a return within the time prescribed by law, or as extended pursuant to section 5711.04 of the Revised Code, nor fail to list in a return or disclose on an accompanying balance sheet or in other information filed with the return any item of taxable property which he is required by sections 5711.01 to 5711.36 of the Revised Code, to list therein.

"If any taxpayer does so fail * * *:

"(A) * * *

"(B) * * * the assessor shall add to the assessment of each class or item of taxable property which the taxpayer failed to return, list or disclose * * * a penalty of up to fifty per cent thereof; but if such taxpayer makes, within sixty days after the expiration of the time prescribed by such sections, a return or an amended or supplementary return and lists therein or discloses on an accompanying balance sheet or in other information filed with the return all items of taxable property which he is required by such sections to list, and in all cases in which the taxpayer's only default is his failure to pay the amounts specified in section 5719.02 of the Revised Code within the time therein specified, such penalty shall be five per cent of the assessment, and, if the assessment certificate has been issued, an amended assessment certificate shall be issued and substituted therefor.

"* * * *[T]he penalties provided in this section may be abated in whole or in part by the assessor when it is shown that such failure is due to reasonable cause.* The penalty assessment shall be entered on the proper tax list and duplicate, and taxes shall be levied thereon the same as on the assessment itself.

"If any taxpayer does so fail with

respect to a return required to be filed for tax year 1982 or any prior year, the assessor shall add to the assessment of each class or item of taxable property which the taxpayer failed to return, list or disclose in addition to the penalties provided by law, an additional charge at the rate of one-half of one per cent per month from the date such property should have been returned or disclosed until the same is assessed, provided that said additional charge shall not be added to an assessment for any period of time in excess of ten years previous to the date of the assessment." (Emphasis added.)

In the instant cause, the Tax Commissioner stated in her Certificate of Determination:

"The applicant's second objection concerns the assessed penalties of 10% for 1979 and 1980 and 5% for 1981, together with additional charges of 12 1/2%, 6 1/2% and 1/2% for 1979, 1980, and 1981, respectively. R.C. 5711.27 provides that if a taxpayer fails to file a return within the time prescribed or to list or disclose any item of taxable property, a penalty of up to 50% and an additional charge of 1/2% per month shall be added to the assessment. The penalty, but not the additional charge, may be reduced for reasonable cause. Under the facts and circumstances of this case, only 10% penalties were assessed and no further reduction is warranted. The additional charges cannot be reduced.

"Additionally, the subject assessments are hereby affirmed."

The statute indicates that the *penalty may* be abated in whole or in part by the assessor when it is shown that such failure is due to reasonable cause. No similar provision is made authorizing the Tax Commissioner to abate in whole or in part the additional charges imposed under this section. It therefore appears that the Tax Commissioner is without authority to remit such additional charges.

As for the assessed penalties, the word *may* connotes discretion on the part of the Tax Commissioner to abate all or part of the penalty where it is shown that such failure is due to reasonable cause. Appellate review of this discretionary power is limited to a determination of whether an *abuse* has occurred. *Jennings & Churella Constr. Co.* v. *Lindley* (1984), 10 Ohio St. 3d 67, 70, 10 OBR 357, 359, 461 N.E. 2d 897, 900. Appellant has not demonstrated that the Tax Commissioner's decision not to remit the assessed penalty was unreasonable, arbitrary or unconscionable. *Id.* Therefore, this court holds that the decision of the board affirming the Tax Commissioner's determination was both reasonable and lawful. We therefore overrule the second assignment of error and affirm the rulings of the Board of Tax Appeals.

*Decision affirmed.*

HOFSTETTER, P.J., and BASINGER, J., concur.

EDWIN T. HOFSTETTER, P.J., retired, of the Eleventh Appellate District, and RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.